## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

In re SEARCH WARRANT ISSUED ON
APRIL 16, 2010.

Case No.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO UNSEAL THE AFFIDAVIT OF SPECIAL AGENT SHAUN SCHRADER

Petitioners NOVA Benefit Plans, LLC ("NOVA"), Benistar 419 Plan & Trust, US

Benefits Group, Inc., and the Grist Mill Trust (collectively the "Petitioners"), [1] submit this

memorandum of law in support of their motion to unseal the affidavit (the "Affidavit") of

Special Agent Shaun Schrader ("Agent Schrader") in support of a search warrant for the offices

located at 100 Grist Mill Road, Simsbury, Connecticut, issued on April 16, 2010 (the

"Warrant").  Because Petitioners have a common law and constitutional right of access to the

Affidavit and because the Internal Revenue Service (the "IRS" or "Government") has no

compelling interest outweighing Petitioners' rights, the Court should issue an order to unseal the

Affidavit immediately and without further delay.

---

[1] NOVA is the Sponsor and the Administrator of certain Internal Revenue Code § 419 Welfare Benefit Plans, including the Sickness, Accident, Disability & Indemnity Trust, the Long Term Care Trust, and the Life One Plan & Trust.  These Plans and the Petitioners were named in the search warrant signed by Magistrate Thomas Smith on

## I.     Preliminary Statement

This matter arises from a "commando-style" raid conducted on a peaceful office building in tranquil Simsbury, Connecticut, on April 20, 2010, by approximately 70 agents from the IRS Criminal Investigation Division ("IRS-CID"), apparently under the authority of a warrant signed by Magistrate Judge Thomas Smith.  The IRS-CID agents proceeded to spend over thirteen hours ransacking the office space located at 100 Grist Mill Road, shared by Petitioners and other entities who are not named in the Warrant.  At the end of the ordeal, the IRS-CID agents had seized 408 boxes of documents and other property, the vast majority of which belong to entities not named in the Warrant or which are clearly outside the scope of the Warrant for the reasons detailed above.

The Warrant authorized the search of the office of "NOVA Benefit Plans LLC, also known as Benistar, located at 100 Grist Mill Road, Simsbury, Connecticut" and called for items maintained by or on behalf of "NOVA Benefit Plans, LLC; Benistar; Benefit Plan Advisors; Benistar 419 Advantage Plan; Benistar 419 Plan & Trust; NOVA Sickness, Accident, Disability & Indemnity Trust; US Benefits Group, Inc.; NOVA Long Term Care Trust; NOVA Life One Plan & Trust; Grist Mill Trust" and other IRC § 419 Welfare Benefit Plans located at 100 Grist Mill Road, Simsbury, Connecticut.

As an initial matter, there is no entity that exists that is simply referred to as "Benistar" and NOVA has never been referred to as "Benistar" or has ever been known as "Benistar." Moreover, Benefit Plan Advisors is a Delaware shell corporation that has been out of business for a year.  When it was active, it was the Sponsor for the Grist Mill Trust which is specifically **not** a 419 Plan.  Similarly, the Benistar 419 Advantage Plan existed from 1998-2000, and was

April 16, 2010. Petitioners US Benefits Group and Grist Mill Trust are not engaged in the Internal Revenue Code Section 419 Plan business.

then superseded by the Benistar 419 Plan & Trust.  The Benistar 419 Plan & Trust was itself effective only until December 2003 because of changes in the IRC Regulations involving §419 Plans.  Because the scope of the Search Warrant is after 2004, it was grossly inappropriate to take materials belonging to these Trusts.  US Benefits Group, Inc. is listed on the Warrant, but is not in the "419 Plan business."  Similarly, the Grist Mill Trust was also listed in the Warrant but does not purport to be exempt from the rules and limitations of Code Sections 419 and 419A by being described under Code Section 419A(f)(6).

The property that was invaded is a large 60,000 square foot building that was previously the world headquarters for the Ensign-Bickford Company, once Simsbury's largest employer.  It is a matter of public record that the building is owned and has been owned for the last several years by Grist Mill Partners, LLC, also not listed on the Warrant, but a taxpayer that files regular tax returns with the IRS.  So, too, does the main tenant in the building, Benistar Admin Services, Inc. ("BASI"), which is 100% owned by its employees through an Employee Stock Ownership Plan ("ESOP").  Both BASI and the BASI ESOP file tax returns with the IRS each year showing 100 Grist Mill Road as their primary address.  There are a number of other entities that occupy the building at 100 Grist Mill Road that have nothing to do with the "419 Plan business" and were not listed on the Warrant, yet still were inconvenienced by the Warrant and had their property seized for no valid reason.

Additionally, there was no mention of a violation or suspected violation of any law in the Warrant.  Instead, the Warrant simply listed the items to be seized from Petitioners and "any other trusts, businesses, or entities that promote, administer, or utilize 419 plans for the time period of 2004 to present."  A "419 Plan" is a multiple employer welfare benefit plan as described under Internal Revenue Code Section 419A(f)(6).  There is no suggestion in the

Warrant that involvement in a 419 Plan or the administration of a welfare benefit plan is, in itself, a violation of the law.

The Government's decision to send 70 armed agents to this peaceful facility in Connecticut was an overly aggressive intimidation tactic given the fact that this was purportedly the execution of a simple search warrant seeking information concerning employee welfare benefit plans under Section 419A(f)(6) of the Internal Revenue Code. The Court should be aware that Petitioners' affiliates had recently filed a Petition for Certiorari to the United States Supreme Court against the Government on sophisticated tax issues involving other 419 Plans, as well as several petitions to quash administrative summonses that are currently pending in this District. This raid may simply be retribution for challenging the Government's authority. If so, it is wholly unconscionable and a clear abuse of Judge Smith's authority.

While Petitioners do not know what the Government used as a basis to justify this raid, Petitioners doubt that the Government told Judge Smith that Petitioners and their affiliates regularly debate and litigate the scope of the Government's authority in tax-related matters. These cases are routinely handled in civil courts on an administrative basis only. To date, the Government has provided Petitioners with no explanation of the supposed probable cause supporting the raid. Without any information as to why the raid was conducted, Petitioners have no means to prepare a defense against the investigation being conducted by the IRS.

As the subjects of the Warrant, Petitioners have a right of access to the materials supporting the Warrant, including the Affidavit. This right of access is grounded in the Fourth Amendment of the Constitution of the United States, as well as federal common law. Petitioners must have an opportunity to review the Affidavit to determine the Government's alleged grounds for probable cause to support the Warrant. To defeat Petitioners' right of access to the Affidavit,

the Government must show that it has a compelling interest that requires the materials to be kept under seal.  Here, the Government cannot possibly demonstrate any interest to outweigh Petitioners' Constitutional right to inspect the Warrant.  Given the extremely public and dramatic fashion in which the IRS agents overtook Petitioners' shared office space and illegally seized hundreds of boxes of documents, the Government cannot reasonably claim they have an interest in maintaining the confidentiality of the investigation.  Indeed, upon information and belief, the Government notified local television news and newspapers about the raid.  In the event that the Court finds that the Government has demonstrated a compelling interest, the Government cannot show that no less restrictive means, such as redaction of the Affidavit, is available to prevent disclosure.

## II.     Statement of Facts

On Friday, April 16, 2010, the Court issued the sealed Warrant, approving a daytime search of an office space shared by a number of entities, including Petitioners, at 100 Grist Mill Road in Simsbury, Connecticut on Tuesday, April 20th at 8:00 AM.  (A true and correct copy of the Warrant is attached as Exhibit 1.)  The Warrant is directed to NOVA, "also known as Benistar." (Exhibit 1.)  NOVA has never been known as "Benistar."

The Warrant authorized items to be seized maintained by and/or on behalf of NOVA, Benistar, Benefit Plan Advisors, Benistar 419 Advantage Plan, Benistar 419 Plan & Trust, NOVA Sickness, Accident, Disability & Indemnity Trust, US Benefits Group, Inc., NOVA Long Term Care Trust, NOVA Life One Plan & Trust, Grist Mill Trust and "any other businesses or entities that promote, administer or utilize 419 plans from 2004 to the present."  (Exhibit 1.)  To the best of Petitioners' knowledge, the administration of welfare benefit plans is not now, nor has it ever been a crime or a predicate to establish "probable cause" for a warrant.

5

The Warrant approved by the Court relied upon the sealed Affidavit of Agent Schrader in concluding that it established probable cause that certain property, set forth in Attachment B to the Warrant, was concealed on the premises of 100 Grist Mill Road. *See id.*   No indictments have been issued.

The Government's invasion was ostensibly based upon a grand jury investigation out of Milwaukee, Wisconsin that had issued subpoenas to NOVA and Benistar, Ltd, on April 13, 2010, seeking the exact same information on IRC § 419 Welfare Benefit Plans as the Warrant. (True and correct copies of the Subpoenas to Testify Before Grand Jury to NOVA and Benistar are attached as Exhibits 2 and 3 respectively.)  The subpoenas, which were not received until after the raid on 100 Grist Mill Road and have never been properly served, have a return date of June 8, 2010.  NOVA is a shell company that has no assets, employees, or property to speak of. Benistar, Ltd. was dissolved in January 2004 and has been defunct since that time.  This fact would have been evident after a simple search of the IRS's own records.

Pursuant to the Warrant, seventy heavily-armed IRS agents searched the office space at 100 Grist Mill Road, which is shared by two dozen companies, many of whom were not identified in the Warrant and are completely unrelated to the administration of § 419 Welfare Benefit Plans.  The IRS-CID agents executed the warrant in a highly obtrusive and threatening fashion, carrying guns and causing massive chaos, fear and concern among the peaceful employees of Petitioners and other entities occupying the space.  The federal agents occupied the premises for over thirteen hours, eventually seizing over 400 boxes of documents and other property.  In clear violation of the scope of the Warrant, the agents seized property indiscriminately, taking virtually almost everything in sight with no regard to the specific items identified in the Warrant and approved by Magistrate Judge Smith.  The agents also improperly

seized materials belonging to entities other than Petitioners, who share the office space with Petitioners.

On April 22, 2010, third party BASI filed an Emergency Motion for Return of Illegally Seized Property and Request for Immediate Hearing.  Case No. 3:10-mc-00060-VLB, DE 1-1.  On April 29, 2010, a number of the entities located at 100 Grist Mill Road (the "100 Grist Mill Road Petitioners")[2] also filed an Emergency Motion for return of Illegally Seized Property and Request for Immediate Hearing.  Case No. 3:10-mc-00064-AVC.  Neither BASI nor the 100 Grist Mill Road Petitioners were named on the Warrant.

Petitioners file the instant motion to unseal the Affidavit so that they may examine the Government's purported grounds for probable cause to justify the sweeping, improper search and seizure of their offices.  If the Government stands by its alleged probable cause for conducting the highly visible and public raid of Petitioners' private property, the agency should have no problem disclosing the Affidavit to Petitioners, consistent with Petitioners' constitutional and common law rights of public access.

## III.     Argument

### A.     Petitioners Have a Right of Access to the Affidavit

Petitioners have a right of access to the Affidavit under both the Fourth Amendment of the Constitution and under federal common law to learn the purpose of the Government's intrusion and the seizure of their property.  Under both analyses, Petitioners are entitled to a qualified right to access search warrant materials, including affidavits in support, as a means of protection against unjustified governmental intrusion.

---

[2] The 100 Grist Mill Road Petitioners including Pettibone Tavern, LLC, Grist Mill Partners, LLC, 1 & 3 Mill Pond Partners, LLC, Grist Mill Capital, LLC, Avon Capital, LLC, ARIA, LLC, Charter Oak Trust, Avon Trust, USB Client Services, Inc., Caroline Financial Group, Inc., Rex Insurance Services, Inc., BESTCO Benefit Plans, LLC,

## 1.    The Right of Access under the Fourth Amendment

"There is a constitutional right under the Fourth Amendment to examine an affidavit in support of a search warrant after execution," "that the government, not the target, must demonstrate compelling government interests in keeping the affidavit under seal," and that the government must demonstrate that "no less restrictive means, such as redaction, is available" to prevent disclosure. *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 587 (D. Md. 2004); *see also United States v. Oliver*, 2000 U.S. App. LEXIS 3630, No. 99-4231, 2000 WL 263954 (4th Cir. 2000) (recognizing a Fourth Amendment right to examine the search warrant affidavit that may only be overridden where "the Government (1) demonstrates that a compelling governmental interest requires materials to be kept under seal and (2) there is no less restrictive means, such as redaction, available'") (citation omitted).[3] Without the right of access to the affidavit on which the search warrant was based, the search subject could *never* make such a challenge. *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 588 (emphasis in original).

Early Advisory Committee Notes to Fed. R. Crim. P. 41 make it clear that it was originally intended that persons wishing to challenge a warrant would have access to the supporting affidavit. The amended rules provide persons wishing to challenge a warrant with the right to access the supporting affidavit; and the rules also establish the right of a person aggrieved by the execution of a search warrant to challenge the propriety of the seizure of his property in the first place.

---

Boston Property Exchange Transfer Company, Inc., Lincoln Financial Services Corporation, Wayne Bursey and Shawndrika Gardner.

[3] *Oliver* is an unpublished opinion and therefore not binding precedent pursuant to Local Rule 36(c) of the United States Court of Appeals for the Fourth Circuit. However, the court in *Search Warrants* found "the holding in *Oliver* persuasive in light of the language of the Fourth Amendment itself and numerous other authorities supporting the right of access…. the government's argument that the Fourth Circuit opinion in *Oliver* is unpublished and therefore

Several other courts have determined that the Fourth Amendment confers an "independent pre-indictment right of access to search warrant materials on the search subject whose property is searched." *Id.* at 587-88 (*citing In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 301 (S.D.Ohio 1995) (…"if citizens are guaranteed by the Fourth Amendment the right 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' it is inherently a part of that right that they be allowed to know whether the Fourth Amendment's mandate of probable cause, supported by oath or affirmation, has been satisfied"); *In re the Search of Up N. Plastics, Inc.*, 940 F. Supp. 229, 232-33 (D. Minn. 1996) ("The Fourth Amendment requirement of probable cause is meaningless without some way for targets of the search to challenge the lawfulness of that search.  Where the government asserts a need to seal the information from the eyes of the person whose property was searched, it must make a specific showing of compelling need and must establish that there is no less restrictive alternative to sealing the records"); *In the Matter of Searches of Semtex Indus. Corp.*, 876 F. Supp. 426 (E.D.N.Y. 1995) (noting that, on business' motion to unseal warrant affidavit, materials may not be sealed indefinitely pending the government's decision to issue an indictment); *In re WAG-AERO, Inc.*, 796 F. Supp. 394, 395 (E.D. Wis. 1992) (concluding that WAG-AERO's right to challenge the issuance of the warrant trumped the government's concern "that disclosure would enable the target company to obstruct the investigation and might threaten the safety of unnamed witnesses," and that therefore "the heavy cloak of secrecy had been misapplied" by the government).

Traditionally, the government reserved the search warrant for investigations of "dangerous activities" where the governmental interest in protecting the public and preserving

---

not binding precedent upon the Court belies the weakness of its position." *In re Search Warrants on April 26, 2004*, 353 F. Supp. 2d at 587.

evidence is strong. *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at 589

(*citing* David Horan, *Breaking the Seal on White-Collar Criminal Search Warrant Materials*, 28

Pepp. L. Rev. 317, 320 (2001)) (quotation omitted).  The sealing of search warrant materials has

traditionally been considered "an extraordinary action" which was necessarily supported by a

showing of "real harm." *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d at

589,  3 A Charles Alan Wright, Nancy J. King & Susan R. Klein, *Federal Practice and

Procedure Crim.* § 672 at 333 (3d ed. 2004).

### 2.     The Right of Access under Federal Common Law

In addition to the right of access rooted in the Fourth Amendment, Petitioners have a

common law right of public access to the Affidavit.  The common law recognizes a right of

public access to "judicial documents" or "judicial records," defined as those documents filed

with a court and "relevant to the performance of the judicial function and useful in the judicial

process." *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 582

(S.D.N.Y. 2009) (*quoting United States v. Amodeo*, 44 F.3d 141, 145-46 (2d Cir. 1995)

("*Amodeo I*") (further characterizing the right as a "presumption favoring access to judicial

records").  Access to such documents promotes the legitimate interests of the public and the

press in "keep[ing] a watchful eye on the workings of public agencies" and "publish[ing]

information concerning the operation of government." *Amadeo*, 44 F.3d at 145 (*quoting Nixon v.

Warner Communications, Inc.*, 435 U.S. 589, 597-98, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978)).

Affidavits in support of seizure or search warrants are central to a court's probable cause

determination. These documents clearly fall within the definition of "judicial documents" and

public access to them facilitates public monitoring of the various government agencies and

branches. *All Funds*, 643 F. Supp. 2d at 582-3 (*citing In re Application of Newsday, Inc.*, 895

F.2d 74 (2d Cir. 1990) (presuming a common law right of access to affidavit in support of a search warrant application and discussing countervailing interests); *In re Application of the N.Y. Times Co.*, 600 F. Supp. 2d 504, 507 (S.D.N.Y. 2009) (holding that materials in support of wiretap applications "plainly" qualify as "judicial documents" because "courts must necessarily review them in order to perform" their task of deciding such applications), rev'd on other grounds, *In re NYT Wiretap*, slip op. Nos. 09-0854-cv (L), 09-1164 (con), 2009 U.S. App. LEXIS 17642 (2d Cir. Aug. 7, 2009).

The Court must determine the weight to be accorded the common law right of access. The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). Especially great weight is given to documents that are material to particular judicial decisions and thus critical to "determining litigants' substantive rights -- conduct at the heart of Article III -- and . . . public monitoring of that conduct." *Id.*

In *All Funds*, the Southern District of New York, in granting a motion to unseal materials supporting a search warrant to investigate an internet gambling website, determined that the presumption of access to an affidavit is entitled to great weight:

> There can be no doubt that a court's determination that a person's property may be seized involves the adjudication of that person's substantive rights, or that information upon which the court relies in making that determination directly affects the adjudication. The affidavits at issue here contain the information forming the basis for the probable cause determinations that were prerequisites for the issuance of the seizure warrants. **The common law presumption of access to the affidavits is therefore entitled to great weight**.

643 F. Supp. 2d at 583 (emphasis added) (citations omitted).

Where the presumption of access is "of the highest" weight, as to material sought by the public or press, the material "should not remain under seal *absent the most compelling reasons*." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006) (emphasis in original) (citation omitted) (remanding to the district court to determine whether the rights of access were overcome by competing considerations).  In balancing the relevant countervailing factors, the Court "has a responsibility to exercise an informed discretion . . . with a sensitive appreciation of the circumstances" surrounding the affidavits. *Nixon*, 435 U.S. at 603. To the extent that compelling reasons exist to deny public access to the subject affidavits, the limitation should not be broader than necessary. *See, e.g.*, *In re Newsday*, 895 F.2d at 80 (warning against "drastic restrictions on the common law right of access" and approvingly noting district court's limited redactions); *In re San Francisco Chronicle*, No. M07-256 (TCP), 2007 U.S. Dist. LEXIS 68322, 2007 WL 2782753, at *2, *4 (E.D.N.Y. Sept. 24, 2007) (limiting redactions to identifying information of witnesses where the role of that information in the exercise of judicial power and its value in monitoring courts were "minimal"); *Semtex Indus. Corp.*, 876 F. Supp. at 429 (directing the eventual unsealing of warrant application with redactions of only "information regarding under cover agents or cooperators"). The Court is required to order disclosure absent compelling reasons to deny access and even then must employ the least restrictive possible means of doing so. *All Funds*, 643 F. Supp. 2d at 584.

Petitioners' right of access to the Affidavit is directly in line with the rights of access to search warrant materials afforded to search targets under both the Fourth Amendment and federal common law.  The Government's decision to seal the Affidavit is unnecessary and inappropriate.  The Government's relies on the Warrant to justify its agents' overly invasive search and seizure of Petitioners' property, but by sealing the Affidavit, the Government refuses

to make known its purported grounds for probable cause for the unlawful search and seizure in the first place.

Petitioners are in the business of providing employee benefit plan services.  This business is a far cry from the "dangerous activities" contemplated by the traditional search warrant investigations, such as narcotics operations or organized crime activities.  They are based in a peaceful corporate park in Simsbury, Connecticut.  The IRS cannot cite to any "real harm" at stake in its investigation of Petitioners or why the "commando raid" could not wait until after the June 8th return dates for the grand jury subpoenas.  Without access to the Affidavit,  Petitioners have no means to challenge the IRS's abusive actions or confirm the violations of their Constitutional rights.

To combat this very problem, Courts have specifically found that the Fourth Amendment of the United States Constitution, as well as federal common law, provides search targets with a right of access to search warrant materials, including supporting affidavits.  Without the ability to access such information, search targets, such as Petitioners, are helpless to defend their constitutional right to unreasonable search and seizure from any government agent with a search warrant in hand.  To be set forth more fully below, here the IRS cannot possibly demonstrate any legitimate interest in keeping the Affidavit sealed that outweighs Petitioners' right to examine the IRS's alleged probable cause to support the search and seizure of Petitioners' documents related to legal § 419 welfare benefit plans.

**B.**    **The Government Has No Compelling Interest in Keeping the Affidavit Under Seal**

The Government has no compelling interest in keeping the Affidavit under seal that outweighs Petitioners' rights of access under the Fourth Amendment and under federal common law. *See Lugosch*, 435 F.3d at 123; *In re Search Warrants Issued on April 26, 2004*, 353 F.

Supp. 2d at 587. In the event that the Court finds that the Government does have a compelling interest in keeping the Affidavit under seal, the Court must protect the Government's interest in the least compelling means necessary, e.g. redacting the Affidavit rather than keeping it entirely under seal.

Petitioners' best guess as to the Government's interest in sealing the Affidavit is maintaining the confidentiality of the grand jury investigation of Petitioners. But the Constitution requires that citizens should not need to guess why their government intruded upon their property. The Government's interest in the sensitive nature its ongoing criminal investigation is undermined by its highly public search and seizure of Petitioners' office. If the Government was concerned about the confidentiality of its investigation, it should not have conducted a wholesale confiscation of Petitioners' property, as well as that of BASI and the 100 Grist Mill Road Petitioners, irrespective of the scope of the Warrant.

Even if the Court should determine that the Government did have a compelling interest in protecting its ongoing criminal investigation, then such an interest is no longer compelling since they have seized every file in the building, including documents far outside the scope of the subpoenas and is certainly not sufficient to justify the sealing of the entire Affidavit. *See All Funds*, 643 F. Supp. 2d at 584 (determining that government's interest in an ongoing criminal investigation did not mandate a total denial of access, but rather the redaction of affidavits to be placed in the Court's public file).

## IV.    Conclusion

Petitioners NOVA and the other IRC § 419 Plans  respectfully ask this Court to immediately enter an order unsealing the Affidavit. In the alternative, Petitioners request that the Court order the Government to file a redacted version of the Affidavit with the Court, redacting

only portions of the Affidavit essential to protecting the names of third parties – if any – that the

Court feels should be protected under law.

Dated:  May 18, 2010

PETITIONERS NOVA, BENISTAR 419
PLAN & TRUST, US BENEFITS GROUP,
INC., and GRIST MILL TRUST

By: _____
Joseph M. Pastore III (ct11431)
FOX ROTHSCHILD LLP
One Landmark Square, 21st Floor
Stamford, CT 06901
Telephone:  (203) 425-9500
Facsimile:   (203) 425-9595

## CERTIFICATE OF SERVICE

I, Joseph M. Pastore III, hereby certify that on May 18, 2010, that paper copies of these documents were sent via First Class U.S. Mail as follows:

The Honorable Douglas Shulman
Commissioner, Internal Revenue Service
1111 Constitution Avenue, N.W.
Department of Treasury
Washington, DC 20224

_____
Joseph M. Pastore III

# EXHIBIT 1

United States District Court

_____  DISTRICT OF _____ **CONNECTICUT** _____

<table>
<tr><td><b>In the Matter of the Search of</b><br><b>(Name, address or Brief description of person,</b><br><b>property or premises to be searched)</b></td><td><b>SEARCH WARRANT</b><br><br><b>CASE NUMBER:</b></td></tr>
</table>

The office of NOVA BENEFIT PLANS LLC, also
known as BENISTAR, located at 100 Grist Mill
Road, Simsbury, Connecticut.

To: **Shaun Schrader, IRS-CID** and any Authorized Officer of the United States

Affidavit(s) having been made before me by Special Agent Shaun Schrader  who has reason to believe that
on the person of or **x** on the property or premises known as (name, description and/or location)

The office of NOVA BENEFIT PLANS LLC, also known as BENISTAR, located at 100 Grist Mill Road, Simsbury,
Connecticut, 06070. The property is described as a single story office building. The lower portion of the building consists
of red brick and windows, while the upper portion of the building consists of horizontal gray siding. The property is
accessed by a short driveway off of Grist Mill Road.  At the bottom of the driveway is a red brick structure with a sign
attached to it that says "100 GRIST MILL RD." At the top of the driveway, as you approach the parking lot, is a wooden
sign that reads "DIRECTORY, ENTRANCE 1, BENISTAR." There is no signage on the exterior of the building itself.

in the _____ District of _____ **CONNECTICUT** _____ there is now
concealed a certain person or property, namely (describe the person or property to be seized)

*See* Attachment B.

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the
person or property so described is now concealed on the person or premises above-described and
establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before **April 25, 2010**

(not to exceed 10 days) the person or place named above for the person or property specified, serving this
warrant and making the search (in the daytime - 6:00 A.M. to 10:00 P.M.) (at any time in the day or night
as I find reasonable cause has been established) and if the person or property be found there to seize
same, leaving copy of this warrant and receipt for the person or property taken, and prepare a written
inventory of the person or property seized and promptly return this warrant to THOMAS P. SMITH,
UNITED STATES MAGISTRATE JUDGE as required by law.

_April **16**, 2010 at **1:05 p.m.**_____
**Date and Time Issued**

at ___ HARTFORD, CONNECTICUT ___
   **City and State**

THOMAS P. SMITH
UNITED STATES MAGISTRATE JUDGE ___
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

## ATTACHMENT B

### ITEMS TO BE SEIZED

The following items maintained by and/or on behalf of **NOVA BENEFIT PLANS, LLC; BENISTAR; BENEFIT PLAN ADVISORS; BENISTAR 419 ADVANTAGE PLAN; BENISTAR 419 PLAN & TRUST; NOVA SICKNESS, ACCIDENT, DISABILITY & INDEMNITY TRUST; US BENEFITS GROUP, INC; NOVA LONG TERM CARE TRUST; NOVA LIFE ONE PLAN & TRUST; GRIST MILL TRUST** and any other trusts, businesses or entities that promote, administer, or utilize 419 plans for the time period of 2004 to present:

1. Any and all documents and records that relate to current and former clients/participants (employers and beneficiaries) of 419 plans including client lists, complete client files, client databases, contracts, financial information, applications, enrollment documents, benefit summaries and disclosures, certificates of coverage, billing information, termination documents, claim documents, correspondence, contact information, and records of payments received from and made to clients/participants disclosing date, amount, and purpose of each payment.

2. Records disclosing and documenting where and how funds from clients/participants are invested, including but not limited to life insurance and annuity contracts, insurance applications and agreements, account statements, correspondence, Forms 1099, and records showing dates and amounts of premiums paid, receipts, and disbursements.

3. Any and all trust documentation to include declarations, contracts, extracts, indentures, agreements, certificates, bylaws, correspondence, minute books including any minutes of meetings with the trustees, trust records reflecting formation of trust and designation of trustees and control of the trusts. All financial statements, bookkeeper's and/or accountant's work papers used in the preparation of trust records or tax returns. Retained copies of all federal and state tax returns.

4. All bookkeeping records and other financial records including general ledger, general journals, all subsidiary ledgers and journals, gross receipts and income records, cash receipts and disbursement records and/or journals, accounts receivable and payable ledgers and records, bad debt records, loan receivable and payable ledgers, voucher register and all receipts and expenses invoices including all invoices documenting expenses paid by cash (currency ) or bank check (cashier or teller checks) and retained copies of any bank checks (cashier or teller checks.)

5. Records of any loans to clients/participants including applications, checks (front and back) issued for loans, repayment records including records revealing the date, amount, and method of repayment (cash or check), and copies of checks (front and back) used to repay loans.

6.     Any and all financial records reflecting income and expenses including: bank statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, records reflecting the identity of checks deposited, withdrawal slips, and records disclosing the disposition of withdrawals, Forms 1099, debit and credit memos. Cancelled checks (front and back), check stubs, check requisition forms and/or check authorization documents, check registers, deposit slips, money orders and money order receipts, cashier checks and cashier checks receipts, ledgers, journals, wire transfers, debit advice, letter instructions regarding transfer of funds, bank notices, credit memos, trust accounts, brokerage accounts, loan files, and all other records reflecting any cash receipts and cash disbursements, and any other records relating to bank accounts.

7.     Corporate minute books, stock register or other records reflecting ownership of corporate stock. All financial statements, bookkeeper's and/or accountant's workpapers used in the preparation of corporate records or tax returns. Retained copies of all federal and state income, payroll and excise tax returns.

8.     Legal opinions and arguments regarding 419 plans as well as supporting documentation.

9.     Any and all documents pertaining to the solicitation or recruitment of clients and potential clients including advertisements, brochures, educational materials, promotional materials, legal opinions, and tax guidance.

10.    Any and all information, records, and correspondence related to brokers, middlemen, and others who promote 419 plans who are not directly employed by the above.

11.    Any and all documents, notes, letters, memoranda, correspondence, communications, and electronic mail messages (e-mails) between employees, current and former client/participants, insurance companies, brokers, and other related parties.

12.    Appointment records, diaries, calendars, message logs and other documents used to record schedules, meetings, conversations, or other events. Address books (including electronic address books, such as devices commonly referred to as electronic organizers), message logs, phone call message slips, or other indicia of notation of messages and telephone numbers.

13.    Any and all copies of IRS publications and documents. IRS Tax Manuals, correspondence, and notices. Instruction or reference materials containing information about tax, trusts, and tax avoidance schemes.

14.    All information or data covered by the above paragraphs that has been stored in the form of magnetic or electronic coding on computer media or media capable of being read by a computer or with the aid of computer-related equipment, including but not limited to floppy disks, fixed hard disks, removable hard disks, tapes, laser disks, videocassettes, CD-ROMs, DVD disks, Zip disks, smart cards, memory sticks, memory calculators, personal digital assistants (PDAs), cell phones, and/or other media that is capable of

storing magnetic coding, the software to operate them and related instruction manuals.

15. All electronic devices capable of storing, analyzing, creating, displaying, converting, or transmitting the electronic or magnetic computer impulses or data. These devices include, but are not limited to: computers, computer hardware, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external drives, fax machines, and all written, published or printed materials which provide instructions concerning the operation of the above listed computer equipment software.

16. All instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer, including but not limited to: operating systems, application software, computer passwords and data security devices, and software used to communicate with the equipment described above.

# EXHIBIT 2

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

# United States District Court

_____EASTERN_____ DISTRICT OF _____WISCONSIN_____

TO:

NOVA Benefit Plans, LLC
100 Grist Mill Road
Simsbury, CT 06070

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:

☐ PERSON   ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| UNITED STATES FEDERAL COURTHOUSE 517 East Wisconsin Avenue Milwaukee, Wisconsin 53202 | Room 347 |
| | **DATE AND TIME** 06-08-10 @ 9 a.m. |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

For the time period 2004 to the present, the items identified on the attachment to this subpoena. Any document withheld under a claim of privilege must be identified on a privilege log that identifies the document by:  date created; the author and recipient; the subject matter; and the privilege(s) asserted.

In lieu of actually appearing before the Grand Jury with the records, you may forward the records to Special Agent Shaun Schrader, IRS-CI, Milwaukee, WI, Ofc: 414/231-2443, and authorize him to return these records to the Grand Jury on your behalf.  If you have any questions, please contact SA Schrader.

☐ *Please see additional information on reverse*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK | DATE |
|---|---|
| **Jon W. Sanfilippo, Clerk** | April 13, 2010 |
| (BY) DEPUTY CLERK | |

| This subpoena is issued on application of the United States of America 2008R00193 (1&3) (# 42) | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY GORDON P. GIAMPIETRO, Asst. U.S. Attorney 517 E. Wisconsin Avenue, Room 530 Milwaukee, Wisconsin 53202 414/297-1704 |
|---|---|

*If not applicable, enter "none"

**Victim/Witness Info Line: 1-800-680-8949**

<u>ATTACHMENT TO GRAND JURY SUBPOENA</u>

For NOVA Benefit Plans, LLC, and any of its predecessors, successors, affiliates, or subsidiaries, the following categories of documents:

1.      Any and all documents and records that relate to current and former clients/participants (employers and beneficiaries) of 419 plans including client lists, complete client files, client databases, contracts, financial information, applications, enrollment documents, benefit summaries and disclosures, certificates of coverage, billing information, termination documents, claim documents, correspondence, contact information, and records of payments received from and made to clients/participants disclosing date, amount, and purpose of each payment.

2.      Records disclosing and documenting where and how funds from clients/participants are invested, including but not limited to life insurance and annuity contracts, insurance applications and agreements, account statements, correspondence, Forms 1099, and records showing dates and amounts of premiums paid, receipts, and disbursements.

3.      Any and all trust documentation to include declarations, contracts, extracts, indentures, agreements, certificates, bylaws, correspondence, minute books including any minutes of meetings with the trustees, trust records reflecting formation of trust and designation of trustees and control of the trusts. All financial statements, bookkeeper's and/or accountant's work papers used in the preparation of trust records or tax returns. Retained copies of all federal and state tax returns.

4.      All bookkeeping records and other financial records including general ledger, general journals, all subsidiary ledgers and journals, gross receipts and income records, cash receipts and disbursement records and/or journals, accounts receivable and payable ledgers and records, bad debt records, loan receivable and payable ledgers, voucher register and all receipts and expenses invoices including all invoices documenting expenses paid by cash (currency ) or bank check (cashier or teller checks) and retained copies of any bank checks (cashier or teller checks.)

5.      Records of any loans to clients/participants including applications, checks (front and back) issued for loans, repayment records including records revealing the date, amount, and method of repayment (cash or check), and copies of checks (front and back) used to repay loans.

6.      Any and all financial records reflecting income and expenses including: bank statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, records reflecting the identity of checks deposited, withdrawal slips, and records disclosing the disposition of withdrawals, Forms 1099, debit and credit memos. Cancelled checks (front and back), check stubs, check requisition forms and/or check authorization documents, check registers, deposit slips, money orders and money order

receipts, cashier checks and cashier checks receipts, ledgers, journals, wire transfers, debit advice, letter instructions regarding transfer of funds, bank notices, credit memos, trust accounts, brokerage accounts, loan files, and all other records reflecting any cash receipts and cash disbursements, and any other records relating to bank accounts.

7.  Corporate minute books, stock register or other records reflecting ownership of corporate stock.  All financial statements, bookkeeper's and/or accountant's workpapers used in the preparation of corporate records or tax returns.  Retained copies of all federal and state income, payroll and excise tax returns.

8.  Legal opinions and arguments regarding 419 plans as well as supporting documentation.

9.  Any and all documents pertaining to the solicitation or recruitment of clients and potential clients including advertisements, brochures, educational materials, promotional materials, legal opinions, and tax guidance.

10.  Any and all information, records, and correspondence related to brokers, middlemen, and others who promote 419 plans who are not directly employed by the above.

11.  Any and all documents, notes, letters, memoranda, correspondence, communications, and electronic mail messages (e-mails) between employees, current and former client/participants, insurance companies, brokers, and other related parties.

12.  Appointment records, diaries, calendars, message logs and other documents used to record schedules, meetings, conversations, or other events.  Address books (including electronic address books, such as devices commonly referred to as electronic organizers), message logs, phone call message slips, or other indicia of notation of messages and telephone numbers.

13.  Any and all copies of IRS publications and documents. IRS Tax Manuals, correspondence, and notices.  Instruction or reference materials containing information about tax, trusts, and tax avoidance schemes.

14.  All information or data covered by the above paragraphs that has been stored in the form of magnetic or electronic coding on computer media or media capable of being read by a computer or with the aid of computer-related equipment, including but not limited to floppy disks, fixed hard disks, removable hard disks, tapes, laser disks, videocassettes, CD-ROMs, DVD disks, Zip disks, smart cards, memory sticks, memory calculators, personal digital assistants (PDAs), cell phones, and/or other media that is capable of storing magnetic coding, the software to operate them and related instruction manuals.

15.  All electronic devices capable of storing, analyzing, creating, displaying, converting, or transmitting the electronic or magnetic computer impulses or data.  These devices include, but are not limited to:  computers, computer hardware, computer components, computer

peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external drives, fax machines, and all written, published or printed materials which provide instructions concerning the operation of the above listed computer equipment software.

16.     All instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer, including but not limited to: operating systems, application software, computer passwords and data security devices, and software used to communicate with the equipment described above.

# EXHIBIT 3

# United States District Court

———— EASTERN ———— DISTRICT OF ———— WISCONSIN ————

TO:

Benistar, LTD
100 Grist Mill Road
Simsbury, CT 06070

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:

☐ PERSON  ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| UNITED STATES FEDERAL COURTHOUSE | Room 347 |
| 517 East Wisconsin Avenue | DATE AND TIME |
| Milwaukee, Wisconsin 53202 | 06-08-10 @ 9 a.m |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

For the time period 2004 to the present, the items identified on the attachment to this subpoena. Any document withheld under a claim of privilege must be identified on a privilege log that identifies the document by: date created; the author and recipient; the subject matter; and the privilege(s) asserted.

In lieu of actually appearing before the Grand Jury with the records, you may forward the records to Special Agent Shaun Schrader, IRS-CI, Milwaukee, WI, Ofc: 414/231-2443, and authorize him to return these records to the Grand Jury on your behalf. If you have any questions, please contact SA Schrader.

☐ Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK **Jon W. Sanfilippo, Clerk** | | DATE |
|---|---|---|
| (BY) DEPUTY CLERK | | April 13, 2010 |

| This subpoena is issued on application | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY |
|---|---|
| of the United States of America | GORDON P. GIAMPIETRO, Asst. U.S. Attorney |
| | 517 E. Wisconsin Avenue, Room 530 |
| 2008R00193 (1&3) | Milwaukee, Wisconsin 53202 |
| (# 43) | 414/297-1704 |

*If not applicable, enter "none"

**Victim/Witness Info Line: 1-800-680-8949**

## ATTACHMENT TO GRAND JURY SUBPOENA

For Benistar, Ltd, and any of its predecessors, successors, affiliates, or subsidiaries, the following categories of documents:

1.  Any and all documents and records that relate to current and former clients/participants (employers and beneficiaries) of 419 plans including client lists, complete client files, client databases, contracts, financial information, applications, enrollment documents, benefit summaries and disclosures, certificates of coverage, billing information, termination documents, claim documents, correspondence, contact information, and records of payments received from and made to clients/participants disclosing date, amount, and purpose of each payment.

2.  Records disclosing and documenting where and how funds from clients/participants are invested, including but not limited to life insurance and annuity contracts, insurance applications and agreements, account statements, correspondence, Forms 1099, and records showing dates and amounts of premiums paid, receipts, and disbursements.

3.  Any and all trust documentation to include declarations, contracts, extracts, indentures, agreements, certificates, bylaws, correspondence, minute books including any minutes of meetings with the trustees, trust records reflecting formation of trust and designation of trustees and control of the trusts. All financial statements, bookkeeper's and/or accountant's work papers used in the preparation of trust records or tax returns. Retained copies of all federal and state tax returns.

4.  All bookkeeping records and other financial records including general ledger, general journals, all subsidiary ledgers and journals, gross receipts and income records, cash receipts and disbursement records and/or journals, accounts receivable and payable ledgers and records, bad debt records, loan receivable and payable ledgers, voucher register and all receipts and expenses invoices including all invoices documenting expenses paid by cash (currency ) or bank check (cashier or teller checks) and retained copies of any bank checks (cashier or teller checks.)

5.  Records of any loans to clients/participants including applications, checks (front and back) issued for loans, repayment records including records revealing the date, amount, and method of repayment (cash or check), and copies of checks (front and back) used to repay loans.

6.  Any and all financial records reflecting income and expenses including: bank statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, records reflecting the identity of checks deposited, withdrawal slips, and records disclosing the disposition of withdrawals, Forms 1099, debit and credit memos. Cancelled checks (front and back), check stubs, check requisition forms and/or check authorization documents, check registers, deposit slips, money orders and money order

Page 1 of 3

receipts, cashier checks and cashier checks receipts, ledgers, journals, wire transfers, debit advice, letter instructions regarding transfer of funds, bank notices, credit memos, trust accounts, brokerage accounts, loan files, and all other records reflecting any cash receipts and cash disbursements, and any other records relating to bank accounts.

7.  Corporate minute books, stock register or other records reflecting ownership of corporate stock. All financial statements, bookkeeper's and/or accountant's workpapers used in the preparation of corporate records or tax returns. Retained copies of all federal and state income, payroll and excise tax returns.

8.  Legal opinions and arguments regarding 419 plans as well as supporting documentation.

9.  Any and all documents pertaining to the solicitation or recruitment of clients and potential clients including advertisements, brochures, educational materials, promotional materials, legal opinions, and tax guidance.

10.  Any and all information, records, and correspondence related to brokers, middlemen, and others who promote 419 plans who are not directly employed by the above.

11.  Any and all documents, notes, letters, memoranda, correspondence, communications, and electronic mail messages (e-mails) between employees, current and former client/participants, insurance companies, brokers, and other related parties.

12.  Appointment records, diaries, calendars, message logs and other documents used to record schedules, meetings, conversations, or other events. Address books (including electronic address books, such as devices commonly referred to as electronic organizers), message logs, phone call message slips, or other indicia of notation of messages and telephone numbers.

13.  Any and all copies of IRS publications and documents. IRS Tax Manuals, correspondence, and notices. Instruction or reference materials containing information about tax, trusts, and tax avoidance schemes.

14.  All information or data covered by the above paragraphs that has been stored in the form of magnetic or electronic coding on computer media or media capable of being read by a computer or with the aid of computer-related equipment, including but not limited to floppy disks, fixed hard disks, removable hard disks, tapes, laser disks, videocassettes, CD-ROMs, DVD disks, Zip disks, smart cards, memory sticks, memory calculators, personal digital assistants (PDAs), cell phones, and/or other media that is capable of storing magnetic coding, the software to operate them and related instruction manuals.

15.  All electronic devices capable of storing, analyzing, creating, displaying, converting, or transmitting the electronic or magnetic computer impulses or data. These devices include, but are not limited to: computers, computer hardware, computer components, computer

peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external drives, fax machines, and all written, published or printed materials which provide instructions concerning the operation of the above listed computer equipment software.

16.   All instructions or programs stored in the form of electronic or magnetic media which are capable of being interpreted by a computer, including but not limited to: operating systems, application software, computer passwords and data security devices, and software used to communicate with the equipment described above.